Filed 6/21/22  P. v. Mota-Avendano CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSE MOTA–AVENDANO,<br><br>        Defendant and Appellant. | A162360<br><br>(Contra Costa County<br> Super. Ct. No. 5-080903-8) |

Defendant Jose Mota–Avendano (Mota[1]) was convicted of three first degree murders, conspiracy to commit murder, and assault with a deadly weapon.  This court affirmed the judgment in 2013, and the California Supreme Court affirmed our judgment in 2015.  (*People v. Elizalde* (Dec. 19, 2013, A132071) as modified on denial of rehg., review granted and opinion superseded and affd. by *People v. Elizalde* (2015) 61 Cal.4th 523, 527.)

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) "eliminated natural and probable consequences liability for murder" " 'to ensure that murder liability is not imposed on a person who is not the actual killer [and] did not act with the intent to kill.' "  (*People v. Lewis* (2021) 11

---

[1] The parties refer to defendant as Mota, and we will do the same.

Cal.5th 952, 957, 959 (*Lewis*).)[2]  As part of the new law, the Legislature added Penal Code[3] section 1170.95, "which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief."  (*Id*. at p. 959.)

Mota, who was not the actual shooter in any of the three murders he was convicted of, filed a petition for resentencing under section 1170.95.  The district attorney opposed the petition on the ground that there was "no rational argument" that the jury relied on a natural and probable consequences theory of liability.  The trial court denied the petition at the prima facie stage, finding he was ineligible for relief as a matter of law.

Mota appeals the summary denial of his petition.  The Attorney General concedes the trial court erroneously denied the petition without issuing an order to show cause.

We will reverse and remand to the trial court so that it can issue an order to show cause and hold a hearing in accordance with section 1170.95, subdivisions (c) and (d).

## FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Murder Convictions*

Mota was charged with two codefendants (Javier Gomez and Gamaliel Elizalde) with the murder of Rico McIntosh (§ 187; count 1), conspiracy to

---

[2] In Mota's trial, the jury was instructed on the doctrine of natural and probable consequences in relation to aiding and abetting and conspiracy where the target crime Mota was alleged to have aided and abetted and conspired to commit was assault with a deadly weapon.  We note that Senate Bill No. 1437 also limited the scope of the felony murder rule (*Lewis, supra,* 11 Cal.5th at p. 957), but that rule is not at issue here because Mota was not prosecuted under a felony murder theory, and the jury was not instructed on it.

[3] Further undesignated statutory references are to the Penal Code.

2

commit murder and assault with a deadly weapon (§§ 182, subd. (a)(1), 187, 245, subd. (a)(1); count 2), active participation in a criminal street gang (§ 182.5; count 3), the murder of Antonio Centron (§ 187; count 4), and the murder of Luis Perez (*ibid.*; count 5).

As recounted by our Supreme Court, "Briefly, the facts supporting [Mota's] convictions are as follows: [¶] Varrio Frontero Loco (VFL) is a subgroup of the Sureño criminal street gang and is active in Contra Costa County. Three witnesses who knew Mota testified he belonged to VFL . . . .

"In 2007, Gamaliel Elizalde rose to power in VFL when another leader fled after committing a murder. Thereafter, the VFL organization began to deteriorate. To reestablish its position, Elizalde directed several members to 'put in more work' by assaulting Norteños to let them 'know we around, we ain't gone.' Mota and four others were put in charge of the gang's efforts. . . . Mota told [VLF associate, Oscar] Menendez that he had to 'earn' a VFL tattoo by doing something 'big' like killing a Norteño.

"On December 22, 2007, VFL members Jorge Sanchez, Francisco Romero, and Hector Molina drove to San Pablo planning to beat or shoot Norteños. They saw three men walking down the street, two wearing the Norteño color, red. Molina hid behind a fence. When the three men rounded the corner, Molina identified himself as VFL and shot at them repeatedly. Antonio Centron was killed; the other two men were wounded but survived.

"On February 16, 2008, Mota and other VFL members drove around gang territory in two cars. The car carrying Mota stopped near Luis Perez, who was standing on the street dressed in a red jacket. After the men in the car argued with Perez, Jorge Camacho fatally shot him.

"On April 26, 2008, Mota was in Norteño territory with Menendez and Javier Gomez. Mota pulled the car he drove alongside Rico McIntosh, who

3

was wearing a red bandana.  Gomez asked McIntosh if he was a 'buster.'
McIntosh replied, 'what the fuck is a buster?' and reached into his jacket.
Menendez thought he heard Mota say, 'pull it out.'  Gomez drew a gun and
shot at McIntosh several times; Mota and Gomez laughed.  McIntosh died the
next day." (*People v. Elizalde, supra*, 61 Cal.4th at p. 528.)

The jury found Mota guilty of three counts of first degree murder,
conspiracy to commit murder and assault with a deadly weapon, and gang
participation.[4]  For the murder of McIntosh (count 1), the jury found true an
enhancement of intentionally discharging a firearm causing great bodily
injury or death.

*Petition For Resentencing*

In 2019, Mota, representing himself, filed a petition for resentencing
under section 1170.95.  The trial court appointed an attorney to represent
him.

In March 2020, the prosecution filed an opposition to the section
1170.95 petition, arguing Mota was not entitled to relief "because he was
found guilty of harboring a premediated and deliberate intent to kill" in each
murder count.  Painting in broad strokes and noting that the jury convicted
Mota of conspiracy to commit murder and three counts of first degree murder,
the prosecutor asserted, "therefore no theory of . . . natural and probable
consequences applied to him or was used to convict him of any of the three
counts of murder."

In October 2020, Mota filed a brief in support of the petition for
resentencing.  He pointed out that the jury was instructed that members of a

---

[4] In connection with the guilty verdict on the conspiracy count, the jury
made separate findings that Mota was guilty of conspiracy to commit murder
and that he was guilty of conspiracy to commit assault with a deadly weapon.

conspiracy are liable "for the natural and probable consequences of any crime or act of a co-conspirator to further the object of the conspiracy" and similarly, that aiders and abettors are "guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted." He argued that the jury instructions and closing argument allowed Mota's conviction for killing Centron (predicated on his involvement as a coconspirator) to be based on the natural and probable consequence doctrine. And he argued that the jury instructions permitted Mota to be convicted of the murders of McIntosh and Perez not only on a direct aiding and abetting theory, but also on the natural and probable consequences doctrine under the theory Mota aided and abetted the target crime of assault with a deadly weapon and murder was a natural and probable consequence of the commission of that crime.

In March 2021, the trial court summarily denied defendant's petition for resentencing.

## DISCUSSION

As we have mentioned, section 1170.95 "provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, *supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or

5

second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subds. (a)(1)–(3); see also § 1170.95 subd. (b)(1)(A).) Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition . . . .' (§ 1170.95, subd. (b)(2).)" (*Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)

When a defendant files a petition in compliance with section 1170.95, the trial court "assess[es] whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis*, *supra*, 11 Cal.5th at p. 960.) A petitioner fails to meet the prima facie showing if the record of conviction shows the petitioner is ineligible for relief as a matter of law. (See *id*. at pp. 970–971; *People v. Offley* (2020) 48 Cal.App.5th 588, 598 [trial court erred in denying a section 1170.95 petition at the prima facie stage where the record "d[id] not establish as a matter of law" that the petitioner was ineligible for relief].)

When a "trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).) 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).) At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable

doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).)" (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

Here, the Attorney General has stepped away from the prosecutor's position in the trial court and concedes that the trial court erred in summarily denying Mota's petition without issuing an order to show cause and holding a hearing to determine whether the prosecution could prove beyond a reasonable doubt that defendant is guilty of the three murders. Although Mota was convicted of conspiracy to commit murder, the Attorney General explains that it is at least "possible that the jury found that the conspiracy to commit murder only applied to one or two of the victims. Therefore, the jury could have found that [Mota] was guilty of killing the other victim or victims because those murders were the natural and probable consequences . . . of the conspiracy to commit assault with a deadly weapon."[5]

We accept the Attorney General's concession. Since we cannot exclude the possibility that one or more of the murder convictions was based on the now-forbidden theory of natural and probable consequences, Mota has made a prima facie showing for relief. Therefore, the trial court should have issued an order to show cause and proceeded with a hearing as provided in section 1170.95 subdivisions (c) and (d). As we have just described, "the burden of proof [at the hearing] shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

---

[5] The Attorney General states that "[t]he instructions allowed the jury to find appellant guilty of first degree murder if there was a conspiracy to commit assault with a deadly weapon and first degree murder was the natural and probable consequence."

In light of our holding, we do not need to address Mota's other arguments.

## DISPOSITION

The order denying the petition for resentencing is reversed, and the matter is remanded for the trial court to issue an order to show cause and hold a hearing in accordance with section 1170.95 subdivisions (c) and (d).

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P.J.


_____

Mayfield, J.*




A162360, *People v. Mota-Avendano*

---

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.