Filed 2/28/25  Residents Assn. of Greater Lake Mathews v. County of Riverside CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RESIDENTS ASSOCIATION OF GREATER LAKE MATHEWS,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>COUNTY OF RIVERSIDE,<br><br>  Defendant and Respondent;<br><br>CAJALCO SQUARE, LP,<br><br>  Real Party in Interest and Respondent. | D084516<br><br><br><br>(Super. Ct. No. RIC2003210) |

APPEAL from a judgment of the Superior Court of Riverside County, Craig G. Riemer and Harold W. Hopp, Judges.  Affirmed.

Channel Law Group, Julian K. Quattlebaum III and Jamie T. Hall for Plaintiff and Appellant.

Best Best & Krieger, Amy E. Hoyt, Sarah E. Owsowitz; Minh C. Tran, County Counsel, G. Ross Trindle III and Melissa R. Cushman, Deputy County Counsel, for Defendant and Respondent.

Ackerman Law and Jason M. Ackerman for Real Party in Interest and Respondent.

The Residents Association of Greater Lake Mathews (the Association) appeals from a judgment denying its combined petition for writ of mandate and complaint for declaratory relief seeking to vacate the approval by the County of Riverside (County) of a commercial retail development (the Cajalco Project). The County determined the Cajalco Project was part of the continuing development of a 15-acre commercial area within a specific plan adopted in 1988. That plan included an environmental impact report (EIR) that evaluated the environmental effects of the anticipated build out.

To comply with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.),[1] the County applied the subsequent environmental review procedures under section 21166 and CEQA Guidelines section 15162. It concluded that a new EIR was not required, instead preparing an addendum to the prior EIR. On appeal, the Association asks us to conduct a de novo review to determine which CEQA procedures apply. It contends the Cajalco Project is a "new project," and section 21094 required the County to prepare a tiered EIR to examine the potential significant environmental effects of the Cajalco Project using the "fair argument" test. The Association does not challenge the evidence supporting the County's predominantly factual determinations underpinning its application of the subsequent review procedures or the evidence supporting its conclusions under section 21166 and the associated guidelines.

We conclude the County correctly applied section 21166 and the applicable CEQA guidelines to the Cajalco Project in determining there was no need for a subsequent EIR. Section 21094, by its own terms, does not

---

[1] All further statutory references are to the Public Resources Code unless otherwise specified. We also refer to guidelines promulgated by the state Natural Resources Agency as "CEQA Guidelines" (Cal. Code Regs., tit. 14, § 15000 et seq.).

apply here.  The Association failed to satisfy its burden to establish a CEQA violation, and substantial evidence supports the County's determinations. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Prior Land Use Plans and the 1988 EIR*

The Lake Mathews Community Plan, adopted in 1987, identified residential and commercial land use policies and goals for more than 42,000 acres in Riverside County.  The plan categorized 15 acres at the intersection of Cajalco and Wood Roads as "Neighborhood Commercial" for "10 to 20 retail stores and/or professional offices."  The area was zoned as Scenic Highway Commercial (C-P-S), which allowed a multitude of commercial uses, some requiring a conditional use permit.

The following year, the County adopted Specific Plan No. 229 (the Specific Plan), converting 980 acres of agricultural land within the Lake Mathews Plan into a residential development known as H.B. Ranches.  The Specific Plan incorporated the 15-acre commercial area at Cajalco and Wood Roads as "a community level commercial development which will be of benefit to on as well as [off-site] residents" with the same C-P-S zoning identified in the Lake Mathews Community Plan.  In conjunction with the Specific Plan, the County adopted Environmental Impact Report No. 255 (the 1988 EIR), providing detailed information about the proposed development's environmental impacts.

In 2003, the County adopted its first comprehensive General Plan, which reassigned the Lake Mathews Community Plan to the Lake Mathews/Woodcrest Area Plan.  The following year, the County approved Amendment No. 1 to the Specific Plan (2004 Amendment), renaming the development Boulder Springs and reducing the size of certain residential lots,

3

while maintaining other aspects of the plan including the previously identified the 15-acre Cajalco/Wood commercial area. In conjunction with the 2004 Amendment, the County adopted an addendum to the 1988 EIR (2004 Addendum) after applying the subsequent review procedures under section 21166 and CEQA Guidelines, section 15162. It concluded "all potentially significant effects have been adequately analyzed in an earlier EIR" and an addendum to the 1988 EIR was "sufficient to make [the 1988 EIR] apply to [the 2004 Amendment]."

## B. *The Cajalco Square Project*

In 2017, Cajalco Square, LP (the developer) applied to the County's Planning Department to construct a shopping center at the northeast corner of Cajalco and Wood Roads on 9.79 acres of the 15-acre area previously designated for commercial development and uses. Over the ensuing years, the developer made design and proposal revisions to address concerns and feedback received during the project development phase and submitted various supporting documents and technical studies assessing traffic, noise, air quality, and climate change and other potential environmental impacts of the proposed build-out of 41,158 square feet of commercial buildings. The developer also sought the approval of a tentative parcel map and a conditional use permit for the operation of a drive thru-fast food restaurant, gas station, carwash, and convenience store.

In January 2020, the County prepared an Initial Study, which described the Cajalco Project as the "continuation of the development" of the commercial area designated in the Specific Plan as Planning Area 1 and noted that the 1988 EIR "evaluated the environmental impacts anticipated from the ultimate build-out of the Specific Plan at a programmatic level." Acknowledging that the 1988 EIR did not specifically evaluate the impact of

4

a fueling station with a carwash because the exact proposed commercial uses were not known at that time, the County assessed the potential environmental impacts of the proposed build-out and considered updated information, including environmental impact analyses of air quality and global climate change, traffic, and noise prepared specifically for the Cajalco Project.

The County concluded the proposed uses were "consistent with the commercial land uses designated by the Specific Plan [adopted in conjunction with the 1988 EIR]" and no "potential significant impacts on the environment" would result from the construction and implementation of the Cajalco Project. Applying the subsequent environmental review procedures in CEQA Guidelines section 15162, the County determined a subsequent EIR was not required and instead prepared an addendum to the 1988 EIR (2020 Addendum). (See CEQA Guidelines, § 15164.)

On May 6, 2020, the County's Planning Commission approved the Cajalco Project application with the 2020 Addendum, and the Association administratively appealed the decision. Following a public hearing on July 14, 2020, the County's Board of Supervisors unanimously approved the Project (with an agreed-upon amendment to limit the carwash operating hours) and adopted the 2020 Addendum.

## C. *Petition for Writ of Mandate*

In August 2020, the Association filed a combined petition for writ of mandate and complaint for declaratory relief in the superior court challenging the County's approval of the Cajalco Project and the 2020 Addendum. In addition to arguing the County violated CEQA by applying the incorrect procedures, the Association claimed the Cajalco Project was inconsistent with the County's General Plan and various land use policies.

5

In its August 30, 2023 ruling, the trial court denied writ relief. The court specifically concluded: (1) the subsequent environmental review procedures under section 21166 applied; (2) the Association failed to satisfy its burden; (3) substantial evidence supports the County's determination that the Cajalco Project did not require the preparation of a subsequent EIR; and (4) the Association failed to prove the project was inconsistent with the General Plan and the commercial land uses contemplated by the Specific Plan.

The superior court entered judgment in favor of the County and the developer on September 20, 2023 and the Association timely appealed.[2]

## DISCUSSION

### A. *Applicable CEQA Principles*

#### 1. *Statutes and Implementing CEQA Guidelines*

The Legislature enacted CEQA "to advance four related purposes: to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, environmental damage; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approval of a project that may significantly impact the environment." (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382 (*Building Industry*).) We interpret CEQA statutes de novo, adopting a construction that provides " 'the fullest possible protection to the environment within the reasonable scope of the statutory language.' "

---

[2] On March 8, 2024, our colleagues in Division Two of the Fourth Appellate District denied the Association's petition for writ of supersedeas and request for an immediate stay.

(*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 390 (*Laurel Heights*); see also *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 45 (*Green Foothills*) ["If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls."].)

CEQA's implementing guidelines are also an integral part of the statutory scheme.  (See *Building Industry, supra,* 62 Cal.4th at p. 384).  They provide "objectives and criteria for the orderly evaluation of projects and the preparation of [EIR]s . . . in a manner consistent with [CEQA]" (§ 21083, subd. (a)) and include specific criteria for public agencies to follow in determining whether or not a proposed project may have a " 'significant effect on the environment'." (*Id.*, subd. (b).)  Courts assign "great weight to the [CEQA] Guidelines except when a provision is clearly unauthorized or erroneous under CEQA" (*Laurel Heights, supra,* 47 Cal.3d at p. 391, fn. 2) and give appropriate deference to the agency's interpretation, considering its specialized knowledge and expertise.  (*Building Industry*, at p. 381.)

2. *The EIR*

Long regarded as the " 'heart of CEQA' " (*Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1123), the EIR "provide[s] public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment." (§ 21061.)  The CEQA guidelines include examples of variations of EIRs tailored to different situations and intended uses, which the lead agency may use, or it may develop its own format.  (See CEQA Guidelines, § 15160; see also *id.*, § 15161 [a "Project EIR," the most common type of EIR, "examines the environmental impacts of a specific development

7

project"]; *id.*, § 15162 [when an EIR has previously been certified for a project, a "Subsequent EIR" is only prepared if changes require major revisions to the prior EIR or new information requires it]; *id.*, § 15164 [an agency "shall" prepare an "Addendum to an EIR" if a subsequent EIR is not required under CEQA Guidelines, § 15162, but some changes or additions to the previously certified EIR are necessary]; and *id.*, § 15168 [a program EIR "may be prepared on a series of actions that can be characterized as one large project" and are otherwise related].)

The agency conducts an initial study to, among other things, decide whether to prepare an EIR or negative declaration[3] and whether a previously prepared EIR can be used. (See CEQA Guidelines, § 15063, subd. (c)(1) & (6).) If the initial study reveals substantial evidence that any aspect of the project may cause a significant effect on the environment, the agency must: (1) prepare an EIR, (2) use a previously prepared EIR that already adequately analyzed the project, or (3) determine, pursuant to a program EIR, tiering,[4] or another appropriate process, which of a project's effects were adequately examined by an earlier EIR or negative declaration. (CEQA Guidelines, § 15063, subd. (b)(1).)

---

[3]    An agency prepares a negative declaration if its initial study shows there is no substantial evidence that the project may have a significant effect on the environment, or the project plans or proposals have been revised to avoid any significant effects. (CEQA Guidelines, § 15070.)

[4]    Tiering "refers to the coverage of general matters in broader EIRs (such as on general plans or policy statements) with subsequent narrower EIRs" (CEQA Guidelines, § 15385) to help an agency exclude duplicative analysis of environmental effects examined in previous EIRs. (§ 21093, subd. (a).) The Legislature has declared that "tiering of [EIRs] will promote construction of needed housing and other development projects" (*ibid.*), and "[t]o achieve [that] purpose, [EIRs] shall be tiered whenever feasible, as determined by the lead agency." (§ 21093, subd. (b).)

3. *Section 21166 and the Need for Subsequent EIRs*

After an EIR has been prepared for a project, section 21166 prohibits agencies from requiring a subsequent or supplemental EIR for the same project unless: (1) "[s]ubstantial changes" are proposed in the project, requiring "major revisions" in the EIR; (2) substantial changes arise in the circumstances of the project's undertaking, requiring major revisions in the EIR; or (3) new information appears that was not known or available at the time the EIR was certified. (*Ibid.*; see also CEQA Guidelines, § 15162.) The agency's determinations must be supported by substantial evidence. If none of the conditions requiring a subsequent EIR are present, but some changes or additions are necessary, CEQA Guidelines section 15164 instructs the agency to prepare an addendum to the previously certified EIR. The decision-making body of the agency must consider both the addendum and the previously certified EIR before making a decision on the project. (*Id.*, § 15164, subd. (d).)

Section 21166 "effectively creates a presumption against further environmental review after a project has been previously subjected to environmental review." (*Save Our Heritage Organisation v. City of San Diego* (2018) 28 Cal.App.5th 656, 666; see also *Moss v. County of Humbolt* (2008) 162 Cal.App.4th 1041, 1049 [after an EIR has been certified, the statutory presumption in favor of the preparation of an EIR "flips" and subsequent environmental review is statutorily limited by the application of section 21166].)

4. *Section 21094 and Tiered EIRs*

"Where a prior environmental impact report has been prepared and certified for a program, plan, policy, or ordinance," section 21094 requires the lead agency to examine the significant environmental effects of a later project

9

by using a "tiered [EIR]." (*Id.*, subd. (a).) But section 21094 applies only if the agency determines the later project is (1) "[c]onsistent with the program . . . for which an environmental impact report has been prepared and certified"; (2) is "[c]onsistent with applicable local land use plans and zoning"; *and* (3) is "*[n]ot subject to Section 21166.*" (§ 21094, subd. (b), italics added.)

" 'If the subsequent project is not consistent with the program or plan, it is treated as a new project and must be fully analyzed in a project—or another tiered EIR if it may have a significant effect on the environment.' " (*Friends of the College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 960 (*San Mateo*).) And if the evidence does not support a determination that a proposed site-specific later project is "either the same as or within the scope of the project, program, or plan described in the [prior] program EIR," section 21166 is inapplicable. (*Sierra Club v. County of Sonoma* (1992) 6 Cal.App.4th 1307, 1321 (*Sierra Club*), citing CEQA Guidelines, § 15168, subd. (c)(5).)

If section 21094 applies, subdivision (c) obligates the agency to consider whether the "new project might cause significant effects on the environment that were not examined in the prior program EIR." (*Sierra Club*, *supra*, 6 Cal.App.4th at p. 1321.) The agency reviews the proposal using the "fair argument test." (*Id.* at pp. 1321–1322.) "[I]f there is substantial evidence in the record that the later project may *arguably* have a significant adverse effect on the environment which was not examined in the prior program EIR, doubts must be resolved in favor of environmental review and the agency must prepare a new tiered EIR, notwithstanding the existence of contrary evidence." (*Id.* at p. 1319, italics added.)

**B.    *Standards of Review on Appeal***

Judicial review of an agency's compliance with CEQA is generally limited to whether there was a prejudicial abuse of discretion. (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 426 (*Vineyard*).) As in other cases, we presume the appealed judgment is correct, and " '[i]t is the appellant who bears the burden of overcoming that presumption.' " (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555.) To establish an abuse of discretion, the Association must show the County failed to proceed in a manner required by law or its determination or decision is not supported by substantial evidence. (§ 21168.5; see also *Vineyard,* at p. 427 [as in other mandamus cases, we review the agency's decision, not the trial court's ruling].)

"While we determine de novo whether the agency has employed the correct procedures, 'scrupulously enforc[ing] all legislatively mandated CEQA requirements' [citation], we accord greater deference to the agency's substantive factual conclusions." (*Vineyard*, *supra*, 40 Cal.4th at p. 435.) We adjust our scrutiny "to the nature of the alleged defect, depending on whether the claim is predominantly one of improper procedure or a dispute over the facts." (*Ibid.*)

We apply the deferential substantial evidence standard of review to the agency's predominantly factual decision to utilize the subsequent environment review procedures under section 21166 and its determination under CEQA Guidelines section 15162 that a subsequent EIR is not required. (*San Mateo, supra,* 1 Cal.5th at p. 953; *Committee for Re-Evaluation of T-Line Loop v. San Francisco Municipal Transportation Agency* (2106) 6 Cal.App.5th 1237, 1251 (*T-Line Loop*).) We indulge all reasonable inferences

11

from the evidence that support the agency's factual findings, and we resolve conflicts in the evidence in favor of the agency's decision. (See *Mani Brothers Real Estate Group v. City of Los Angeles* (2007) 153 Cal.App.4th 1385, 1397.)

## C. *Analysis*[5]

The Association recites the subsequent review procedures under section 21166 and CEQA Guidelines section 15162, but it fails to address the evidence in the record supporting the County's decision to apply those procedures or the predominantly factual findings leading to its decision that a subsequent EIR was not required. Instead, it asks us to limit our analysis to a de novo review of the applicable CEQA procedures and contends the Cajalco Project was a "new project" to which the more forgiving "fair argument" standard under section 21094 applies. It claims the County's reference to "the CEQA tiering concept," CEQA Guidelines section 15152, and its decision to tier the 2020 Addendum from the 1988 EIR further support the application of section 21094 and the fair argument standard.

As we explain, the Association's arguments fail to satisfy its burden to establish error. And even if we overlook the Association's failure to carry its burden on appeal, we conclude substantial evidence supports the County's review of the Cajalco Project under the subsequent review procedures found in section 21166 and its determination that a subsequent EIR was not required under CEQA Guidelines section 15162. The County's preparation of the 2020 Addendum was therefore appropriate. (See CEQA Guidelines, § 15164.)

---

[5] We reject the County's arguments that the Association's appeal is barred by administrative exhaustion or waiver. The Association "fairly apprise[d]" the agency of its complaints and the relevant facts. (*Save the Hill Group v. City of Livermore* (2022) 76 Cal.App.5th 1092, 1104.) It then cited section 21094 in its petition in the superior court.

1. San Mateo *guides our analysis.*

As the California Supreme Court explained in *San Mateo, supra,* 1 Cal.5th at page 949, "Once a project has been subject to environmental review and received approval, section 21166 and CEQA Guidelines section 15162 limit the circumstances under which a subsequent or supplemental EIR must be prepared. These limitations are designed to balance CEQA's central purpose of promoting consideration of the environmental consequences of public decisions with interests in finality and efficiency. Section 21166 comes into play "precisely because in-depth review has already occurred, the time for challenging the sufficiency of the original EIR has long since expired [citation], and the question is whether circumstances have *changed* enough to justify *repeating* a substantial portion of the process." (*Bowman v. City of Petaluma* (1986) 185 Cal.App.3d 1065, 1073.)

As *San Mateo* clarified, whether an agency may proceed under CEQA's subsequent review provisions does not turn on whether proposed changes "render a project new in an abstract sense. Nor does the inquiry turn on . . . matters unrelated to the environmental consequences associated with the project." (1 Cal.5th at p. 951.) Rather, it "necessarily rest[s] on a determination—whether implicit or explicit—that the original environmental document retains some informational value." (*Ibid.*)

Whether an initial environmental document remains relevant despite changed plans or circumstances and whether that document requires major revisions due to those changes are "predominantly factual" questions "for the agency to answer in the first instance, drawing on its particular expertise." (*San Mateo, supra,* 1 Cal.5th at pp. 952–953.) When we review the County's application of the subsequent environmental review procedures under section 21166 and CEQA Guidelines section 15162 to the Cajalco Project, we must

first consider whether substantial evidence supports the County's express or implied determination that the 1988 EIR remained relevant.[6] (*San Mateo,* at pp. 952–953.) If there is adequate support for that assessment, we next decide if substantial evidence supports the County's specific determinations under CEQA Guidelines section 15162, that there have been no substantial changes requiring major revisions to the 1988 EIR and no new information requiring a subsequent EIR. (*San Mateo,* at p. 952; CEQA Guidelines, § 15162, subd. (a).) We do not weigh conflicting evidence or determine who has the better argument. (*San Mateo,* at p. 953.)

2. *The Association's "new project" argument fails.*

Although *San Mateo* rejected the notion that whether a project is a "new project" is an inquiry for the court's independent determination under a de novo standard, the Association asks us to do just that. (See 1 Cal.5th at p. 952 [it is error for a reviewing court to treat "the new project inquiry as a question for the court's independent determination under a de novo standard"].) We cannot invalidate the County's approval of the Cajalco Square development based on the Association's unsupported claim that it is a "new project." (See also *id.* at p. 944 ["When an agency proposes changes to a previously approved project, CEQA does not authorize courts to invalidate the agency's action based solely on their own abstract evaluation of whether

---

[6] During oral argument the Association relied on *Save Our Neighborhood v. Lishman* (2006) 140 Cal.App.4th 1288 as rejecting the notion that an agency may invoke section 21166 as long as there is substantial evidence to support a conclusion that the prior EIR remains relevant. But the Association's argument puts the horse before the cart. The Supreme Court's *San Mateo* opinion was filed ten years *after* the *Lishman* decision. To the extent they are inconsistent, we are bound to apply the standard articulated in *San Mateo.*

14

the agency's proposal is a new project, rather than a modified version of an old one."].)

Instead of addressing whether the 1988 EIR remained relevant or required major revisions as *San Mateo* instructs, the Association makes the unsupported argument that Cajalco Square is a "new project" based on an inaccurate reading of the record. (*San Mateo, supra,* 1 Cal.5th at pp. 952–953) It claims "[t]his case has never been characterized as involving mere changes to the same project as evaluated in 1988" in the face of the County's Initial Study describing Cajalco Square as "a continuation of the development" within the commercial area designated for commercial development in uses in both the 1988 EIR and the 2004 Addendum. It also asserts "[t]he County never claimed in the trial court that the current Project was the same project as the prior project for which the 1988 EIR was prepared," but the County's trial brief reveals its contrary position.[7]

To properly challenge the County's decision under section 21166, the Association "has the burden to demonstrate that the agency's decision is not supported by substantial evidence and is therefore improper." (*T-Line Loop, supra,* 6 Cal.App.5th at p. 1247.) To satisfy this burden, the

---

[7]     For the first time at oral argument, the Association referred us to *Covina Residents for Responsible Development v. City of Covina* (2018) 21 Cal.App.5th 712 as authority for the proposition that the substantial evidence standard of review does not apply if the proposed development is properly characterized as a "new" project. (*Id.* at p. 723, fn. 7.) We do not read the footnote in *Covina Residents* so broadly. The city in that case, unlike the County here, did *not* rely on section 21166 and CEQA Guidelines section 15162. It was the city's choice to proceed "under CEQA's tiering provisions (Pub. Resources Code, §§ 21093, 21094; CEQA Guidelines, § 15152)" (*Covina Residents*, at p. 723, fn. 7) that prompted the *Covina Residents* court to distinguish *San Mateo* and find that its analysis did not apply.

15

Association "must lay out the evidence favorable to the other side and show why it is lacking. Failure to do so is fatal." (*Defend the Bay v. City of Irvine* (2004) 119 Cal.App.4th 1261, 1266.)

The Association makes no attempt to present and challenge the substantial evidence in the record supporting the County's predominantly factual findings upon which it based both its decision to utilize the subsequent environmental review procedures in section 21166 and its determination under CEQA Guidelines section 15162 that a subsequent EIR was not required. (See *San Mateo, supra,* 1 Cal.5th at pp. 952–953; see also CEQA Guidelines, § 15162, subd. (a).) Its insistence that it had "no obligation to identify the substantial evidence in the record supporting the County's decision when the applicable standard is the fair argument standard" cannot remedy this deficiency.

3. *Substantial evidence supports the County's determinations.*

Even if we overlook the forfeiture, ample evidence supports the County's decision to use the subsequent environmental review procedures. "[O]ccasions when a court finds no substantial evidence to support an agency's decision to proceed under CEQA's subsequent review provisions will be rare, and rightly so; 'a court should tread with extraordinary care' before reversing an agency's determination, whether implicit or explicit, that its initial environmental document retains some relevance to the decisionmaking process." (*San Mateo, supra,* 1 Cal.5th at p. 953.)

Here, the County's decision to proceed under CEQA's subsequent review provisions rested squarely on substantial evidence supporting its determination that the 1988 EIR remained relevant. The 1988 EIR described the anticipated commercial development as "a community level commercial development which will be of benefit to on as well as off-site residents."

16

The County's Initial Study underlying the 2020 Addendum explains the Cajalco Project is "a continuation of the development of Planning Area 1 within [the] Specific Plan [adopted in conjunction with the 1988 EIR]." The proposed shopping center is subject to the same C-P-S zoning requirements and is located within the same 15-acre commercial development area designated in the 1988 EIR.

"Once a court determines that substantial evidence supports an agency's decision to proceed under CEQA's subsequent review provisions (see § 21166; CEQA Guidelines section, § 15162), the next—and critical—step is to determine whether the agency has properly determined *how* to comply with its obligations under those provisions." (*San Mateo, supra,* 1 Cal.5th at p. 953.) Here, the County properly found that a new EIR was not required under the subsequent review procedures because sufficient evidence supported its conclusions that the Cajalco Project did not involve substantial changes requiring major revisions of the 1988 EIR (see CEQA Guidelines, § 15162, subd. (a)(1) & (2)), and there was no new information showing the Project would have substantially more severe environmental effects than shown in the 1988 EIR or significant environmental effects that were not discussed in the 1988 EIR (see *id.,* § 15162, subd. (a)(3)).

In addition to the substantial evidence supporting the County's conclusions in the Initial Study, the Cajalco Project proposed less than a full build-out of the commercial area anticipated in the 1988 EIR. The proposed project site would occupy only 9.79 acres of the 15-acre area identified in the 1988 EIR and 2004 Addendum for commercial development. Additionally, while the 1988 EIR reviewed the environmental impact of 163,350 square feet of commercial space, the current project would only build out 41,158 square feet (approximately 25 percent) of the total square footage studied.

17

The record contains substantial evidence supporting the County's conclusion that a new EIR was not required under CEQA Guidelines section 15162. The County's preparation of the 2020 Addendum to the 1988 EIR was therefore appropriate. (See CEQA Guidelines, § 15164, subd. (a) [The "agency shall prepare an addendum to a previously certified EIR if some changes or additions are necessary but none of the conditions described in [CEQA Guidelines section] 15162 calling for preparation of a subsequent EIR have occurred"].) We will not disturb the County's well-founded factual determinations on appeal. (See *T-Line Loop, supra,* 6 Cal.App.5th at p. 1251; *San Mateo, supra,* 1 Cal.5th at pp. 952–953.)

4. *The Association's remaining arguments lack merit.*

First, the Association maintains that section 21094 supplies the applicable framework here, but it ignores the statute's unambiguous language limiting its application to "a later project that the lead agency determines is . . . *[n]ot subject to Section 21166.*" (§ 21094, subd. (b)(3), italics added; see *Green Foothills*, *supra*, 48 Cal.4th at p. 45 [when the language of a statute is unambiguous, we presume the Legislature meant what it said].) We have already concluded that the County properly determined the Cajalco Project is subject to section 21166. Thus, section 21094 is inapplicable by its own terms. (*Id.*, subd. (b)(3).)[8] As a result, the County was not obligated to "examine significant effects of the later project upon the environment by using a tiered environmental impact report." (§ 21094, subd. (a); see also, § 21083.1 [courts "shall not interpret [CEQA]

---

[8]     Having determined that section 21094 does not apply, we do not reach the Association's additional arguments based on the fair argument standard.

18

or the . . . guidelines . . . in a manner which imposes procedural or substantive requirements beyond those explicitly stated"].)[9]

Second, the Association's tiering arguments are misplaced, taking the County's reference in the 2020 Addendum to CEQA Guidelines section 15152 and "CEQA's tiering concept" out of context. The argument ignores the immediately preceding paragraph of the "CEQA Conclusion" that explains: "This Initial Study re-evaluated all CEQA topics for conditions described in [CEQA Guidelines section] 15162 and concludes that some changes or additions are necessary to [the 1988 EIR] due to changes in circumstances that have occurred since the certification of [the 1988 EIR] and [the 2004 Addendum], but none of the conditions described in [CEQA Guidelines section] 15162 calling for preparation of a subsequent EIR have occurred and [the 2020 Addendum] to [the 1988 EIR] is the appropriate document for the [Cajalco Project] in compliance with the California Environmental Quality Act."

The references to tiering and CEQA Guidelines section 15152 in the 2020 Addendum, which the County suggests are typographical errors, cannot trigger the application of section 21094 in the face of the entirety of the record reflecting the County's consistent application of the subsequent environmental review procedures under section 21166 and CEQA Guidelines section 15162. The "[2020] Addendum is being tiered with [the 1988 EIR]"

_____

[9] We also observe that, in the superior court, the Association argued the Cajalco Project was inconsistent with the General Plan and various land use policies. If successful, these arguments would prevent the application of section 21094 based on the additional statutory prerequisites to its application. (See § 21094, subd. (b)(1) & (2) [the later project must also be consistent with the program or plan and local land use plans and zoning]; see also *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1351, fn. 12 [a party is not permitted to change its position on appeal].)

language reflects the Legislature's express intention that EIRs "be tiered whenever feasible, as determined by the lead agency." (See § 21093, subd. (b).) The Association does not point to any evidence in the record indicating that the 1988 EIR was a tiered EIR or "purport[ed] 'to defer analysis of certain details of later phases of long-term linked or complex projects until those phases are up for approval.'" (*San Mateo, supra,* 1 Cal.5th at p. 960.)

Our CEQA inquiry extends only to whether the County prejudicially abused its discretion. The Association has failed to establish that the County did not proceed in a manner required by law or that its determinations were not supported by substantial evidence. (§ 21168.5.)

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.