Filed 11/20/25  Richmond Shoreline Alliance v. City of Richmond CA1/5
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT
DIVISION FIVE

| | |
|---|---|
| RICHMOND SHORELINE ALLIANCE et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF RICHMOND et al.,<br><br>    Defendants and Respondents;<br><br>HRP CAMPUS BAY PROPERTY, LLC,<br><br>    Real Party in Interest and Respondent. | A166004<br><br>(Contra Costa County Super. Ct. No. CIVMSN201967) |

Richmond Shoreline Alliance, Sunflower Alliance, Greenaction for Health and Environmental Justice, Citizens for East Shore Parks, and Sustainability, Parks, Recycling, and Wildlife Defense and Education Fund, or SPRAWLDEF (collectively, plaintiffs), appeal from the denial of their petition for writ of mandate challenging the City of Richmond's (City) determination that a supplemental environmental impact report (EIR) was not required to approve real party in interest HRP Campus Bay Property, Inc.'s (HRP) mixed use development project on approximately 89.6 acres of property located near the Richmond shoreline.  In 2016, the City adopted the Richmond Bay Specific Plan, which included redesignating the

1

project site for mixed use development, and certified an EIR for the specific plan. The 2016 EIR is not challenged in this litigation.

In 2020, the City approved HRP's project and adopted an addendum to the 2016 EIR. The addendum determined that the HRP project would not result in new significant impacts or a substantial increase in environmental impacts previously examined in the 2016 EIR. Plaintiffs contend the trial court erred in finding inadequate grounds for supplemental review under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[1] and in rejecting the significance of new information regarding the rate of sea level rise. They claim supplemental CEQA review is required based on significant changes to the project and new information in a 2019 remediation plan. Plaintiffs also argue they were denied access to a fair and adequate hearing and that the trial court erred in denying their motion for relief under Code of Civil Procedure section 473, subdivision (b) regarding briefing errors. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Prior Environmental Review*

The project site is approximately 89.6 acres of property near the Richmond shoreline, which was used as a chemical manufacturing and research facility from the late 1800's to the mid-1990's, most recently by Zeneca Inc. (project site or Zeneca property). In the late 1990's, the industrial

---

[1] All statutory references are to the Public Resources Code unless otherwise stated.

After the parties submitted briefs in this matter, certain provisions of CEQA were amended by Assembly Bill No. 130 (2025–2026 Reg. Sess.; Stats. 2025, ch. 22) and Senate Bill No. 131 (2025–2026 Reg. Sess.; Stats. 2025, ch. 24). We requested supplemental briefing from the parties as to the impact, if any, of the new legislation on the issues in this appeal. The parties agree that the new legislation does not impact the issues in this matter.

uses at the project site were dismantled. Due to the long industrial history of the site, the soil and groundwater are contaminated. Since the former facility was decommissioned, the extent of the contamination has been studied and the contamination partially remediated. The site was initially remediated under the jurisdiction of the California Regional Water Quality Board, San Francisco Bay. Remediation began in 2002. In 2005, the Department of Toxic Substances Control (DTSC) assumed jurisdiction over the site's additional investigation and remediation.

In 2016, the City adopted the Richmond Bay Specific Plan (Specific Plan), which includes the project site and proposes development on the project site for a mix of retail, residential, and research and development uses. On December 6, 2016, in connection with approval of the Specific Plan, the City certified an EIR. The EIR analyzed the Specific Plan at a program level and also analyzed what it described as the "Sub-Area 4 Project" at a site-specific project level. Sub-Area 4 includes the former Zeneca property. The EIR defined the Sub-Area 4 Project as the likely future scenario for redevelopment of a portion of Sub-Area 4 with up to 2.1 million square feet of "R&D/Business/Service uses"; up to 320,000 square feet of retail use; up to 2,530 residences; and approximately 7.6 acres of open space. The EIR explained that cleanup of the Zeneca property will be completed pursuant to a feasibility study/remedial action plan (FS/RAP) being developed by the DTSC and that redevelopment of the property will comply with the applicable FS/RAP. The City certified the final EIR (FEIR) on December 6, 2016.

On July 9, 2018, the DTSC issued an FS/RAP comparing various remediation plans for Sub-Area 4. The DTSC recommended "Alternative 3a," which provided for targeted soil excavations, in situ groundwater treatment, soil vapor extraction, and long-term monitoring to protect human health and

3

the environment and to accommodate the potential future land uses in the Specific Plan, including multi-family residential uses. The FS/RAP states that "the site cleanup plan . . . assumes a multi-family residential redevelopment footprint over the Site and cleanup of the groundwater and soil gas to a residential standard." In October 2019, the DTSC approved a final FS/RAP for the remediation of the Zeneca property with a negative declaration under CEQA.[2]

The plaintiffs did not challenge either the FEIR or the FS/RAP.

## II. *City Approval of HRP Project and Addendum to EIR*

In May 2020, HRP applied for approval of the mixed use development project at issue in this litigation. The HRP project proposed developing 64 of the 89.6 acres of the Zeneca property, with the remaining acreage to be reserved for open space, parks, and similar public uses. Specifically, the proposed development includes 50,000 square feet of retail development; 4,000 units of multi-family residential housing; approximately 25.9 acres for open space, parks, and trails; related infrastructure such as roadways; and no research and development use.

The City prepared an addendum to the FEIR for the Specific Plan and the Sub-Area 4 Project, which considered the HRP project. The addendum compared the land uses and development differences between the Sub-Area 4 Project, analyzed in the FEIR, and the HRP project. It states that the HRP project will develop 2,480 more residential units; 140,000 fewer square feet of retail use; and none of the 1.27 million square feet of "R&D/Business/Service uses." The HRP project will result in approximately 4,990 more residents

---

[2] A negative declaration is a "written statement briefly describing the reasons that a proposed project will not have a significant effect on the environment and does not require the preparation of an [EIR]." (§ 21064.)

4

and 2,795 fewer employees on site as compared with the previously analyzed Sub-Area 4 Project. The addendum concluded that with implementation of the applicable mitigation measures, the HRP project would not result in any new significant impacts or a substantial increase in the severity of environmental impacts identified in the FEIR. Thus, it concluded no supplemental environmental review was required under Public Resources Code section 21166 or CEQA Guidelines sections 15162 and 15164.[3]

On November 19, 2020, the City's planning commission held a noticed public hearing on approval of the addendum. The planning commission voted unanimously to recommend that the city council approve the addendum and related documents. On December 1, 2020, the city council held a hearing on the HRP project and the addendum and voted to approve the project and the addendum and related documents. On December 15, 2020, the city council voted to adopt an ordinance for the development agreement between the City and HRP for the project.

### III. *The Petition for Peremptory Writ of Mandate*

On December 30, 2020, plaintiffs filed a petition for writ of mandate challenging the City's approval of the HRP project and the addendum to the 2016 EIR. The first cause of action alleged the City violated CEQA based on five enumerated counts: 1) the failure to address new evidence showing changes to the rate of climate changes, specifically sea level rise projections; 2) the failure to address the HRP project's increase of up to 4,000 residential units in combination with increased sea level rise rate projections and the toxic materials located on the site; 3) the failure to address changed circumstances in light of DTSC's 2019 decision to adopt Alternative 3a to

_____

[3] We refer to the California Code of Regulations, title 14, division 6, chapter 3, as the CEQA Guidelines.

5

remediate the site and the impact of increased sea level rise rate projections; 4) the failure to obtain an updated geotechnical evaluation of the HRP project; 5) the failure to update the human health risk assessment based on new guidance from February 2020 for evaluating trichloroethylene and vapor intrusion in the cleanup of toxic waste sites. The second cause of action alleged that the findings made by the city council in support of approving the addendum were not supported by substantial evidence. The third cause of action alleged plaintiffs were denied a fair administrative hearing on their objections to the City's approval of the HRP project and the addendum.[4]

Plaintiffs' trial court opening brief argued that new information regarding sea level rise required additional environmental review, rather than an addendum to the 2016 EIR. Specifically, they argued that the 2016 EIR considered sea level rise of up to 5.5 feet by 2100 but that by January 2020 the State of California issued projections for sea level rise of up to 7.6 feet by 2100. Plaintiffs' opening brief also argued that changes in the configuration of the proposed residential development in the HRP project, from the previously analyzed Sub-Area 4 Project, increased the potential impacts of sea level rise. Finally, they argued that the City violated plaintiffs' right to a fair hearing because the mayor and certain councilmembers exhibited bias in favor of the project.

The City answered the petition but did not file a brief in response to plaintiffs' opening brief. HRP filed a responsive brief opposing the petition.

---

[4] The petition also includes a fourth cause of action, for declaratory relief regarding the rights of plaintiffs and members of the public at public hearings. The fourth cause of action is not at issue in this proceeding.

6

## IV. *The Trial Court Decision*

Following briefing by the parties and oral argument, the trial court issued a detailed, 40-page decision denying the petition. It first found that plaintiffs waived any arguments regarding the City's alleged failures to obtain an updated geotechnical evaluation (count 4 of the first cause of action) or an updated human health risk assessment (count 5 of the first cause of action) because plaintiffs did not address these issues in any of their briefing. The order further found plaintiffs waived their argument that the 2019 FS/RAP constituted new information requiring supplemental environmental review because they did not raise this claim until their reply brief.

The trial court considered the plaintiff's argument that the addendum failed to address new information regarding sea level rise in a 2020 California Coastal Commission document titled " 'Making California's Coast Resilient to Sea Level Rise:  Principles for Aligned State Action.' "  The document, which the trial court referred to as the " '2020 SLR Recommendation,' " included a statement that California's coast faces a significant risk of sea level rise of up to 7.6 feet by 2100.  It also stated one of the "Principles for Aligned State Action" included a target of 3.5 feet of sea level rise by 2050 for planning purposes.  The trial court rejected plaintiffs' argument that the alleged new information regarding sea level rise must be addressed in a supplemental EIR.  It explained that the argument focused on the potential effect of sea level rise on the project and not the effect of the project on the environment, which is the analysis required by CEQA.  The trial court further found that the alleged new information regarding sea level rise did not constitute previously unknown information with significant effects not discussed in the FEIR.  The FEIR evaluated the project based on

7

sea level rise of up to 5.5 feet, which was more than the 3.5-foot target referenced in the 2020 SLR Recommendation. The FEIR also recognized that "all trends [regarding sea level rise] are upward . . . ." In addition, the trial court found that at the planning commission hearing on the addendum, HRP committed to grading the HRP project for up to seven feet of sea level rise.

The trial court found that the changes between the HRP project description and the project previously analyzed in the FEIR were not significant changes requiring a supplemental EIR. Specifically, the trial court considered the changes based on the number of residential units, the size of the residential buildings and their location on the Sub-Area 4 site, the rising groundwater impacts combined with sea level rise, the proposed 10-year development versus gradual development, and indirect environmental impacts. As noted, the trial court found that plaintiffs waived the argument that the DTSC's adoption of Alternative 3a as the remediation plan in the FS/RAP was a changed circumstance regarding further environmental review because they only argued it in their reply brief. The trial court nonetheless rejected plaintiffs' argument that the adoption of Alternative 3a was a changed circumstance requiring further environmental review and found that plaintiffs failed to establish that the FEIR assumed a different remediation plan would be implemented.

The trial court also rejected the plaintiffs' claim that they were denied a fair hearing regarding the approval of the addendum.

Following the hearing on the petition, plaintiffs filed a motion for relief under Code of Civil Procedure section 473, subdivision (b), arguing that their counsel mistakenly omitted a section of the opening brief regarding the DTSC's approval of Alternative 3a in the 2019 FS/RAP and then raised the issue in plaintiffs' reply brief. The motion requested relief based upon

excusable neglect, mistake, or inadvertence and proposed that HRP be permitted to respond to the belated argument in a surreply. On May 25, 2022, the trial court issued an order denying the motion. On the same day, it issued its order denying the petition.

## DISCUSSION

Plaintiffs argue that (1) the trial court erred in finding inadequate grounds for supplemental CEQA review; (2) the trial court erred in rejecting the significance of new information concerning the rate of sea level rise; (3) significant changes to the project, including expanded residential use and in situ treatment of hazardous waste, require supplemental analysis; (4) changes to the project require an updated geotechnical report; (5) changes to the project require an updated human health risk assessment; and (6) the 2019 FS/RAP provides new information that was not considered in the FEIR. Plaintiffs also assert that they were denied a fair hearing during the addendum review process. Finally, they seek reversal of the trial court's denial of their motion for relief for excusable mistake or neglect.

We begin with a discussion of the relevant legal principles regarding CEQA and appellate review of an agency's decision to proceed by addendum to an EIR.

## I. *Legal Principles*

CEQA's purpose is to ensure that an agency's approval of activity that may affect the quality of the environment gives primary consideration to preventing environmental damage. (*Citizens Against Airport Pollution v. City of San Jose* (2014) 227 Cal.App.4th 788, 795.) CEQA involves a three-step process: "The first tier of the CEQA process requires an agency to conduct a preliminary review to determine whether CEQA applies to a proposed project. (Guidelines, §§ 15060, 15061; [citation].) 'If the initial

9

study shows that there is "no substantial evidence that the project or any of its aspects may cause a significant effect on the environment," the agency prepares a negative declaration so stating.  [Citations.]  If the project does not qualify for a negative declaration, the agency must proceed to the third step in the process, full environmental review in an EIR.' [Citation.]" (*Id*. at pp. 795–796.)  " 'The EIR's function is to ensure that government officials who decide to build or approve a project do so with a full understanding of the environmental consequences and, equally important, that the public is assured those consequences have been taken into account.' [Citation.]" (*Id*. at p. 796.)

In this case, the EIR was both a program EIR for the Specific Plan and a project EIR for the Sub-Area 4 Project.  CEQA Guidelines section 15168 states:  "A program EIR is an EIR which may be prepared on a series of actions that can be characterized as one large project and are related either [¶] (1) Geographically, [¶] (2) As logical parts in the chain of contemplated actions, [¶] (3) In connection with issuance of rules, regulations, plans, or other general criteria to govern the conduct of a continuing program, or [¶] (4) As individual activities carried out under the same authorizing statutory or regulatory authority and having generally similar environmental effects which can be mitigated in similar ways."  CEQA Guidelines section 15161 states:  "The most common type of EIR examines the environmental impacts of a specific development project.  This type of EIR should focus primarily on the changes in the environment that would result from the development project.  The EIR shall examine all phases of the project including planning, construction, and operation."

"After an initial EIR is certified, there is a statutory presumption against additional environmental review." (*San Diego Navy Broadway*

10

*Complex Coalition v. City of San Diego* (2010) 185 Cal.App.4th 924, 928.)
Additional environmental review is required only if "one or more of the
following events occurs: (a) Substantial changes are proposed in the project
which will require major revisions of the [EIR]. [¶] (b) Substantial changes
occur with respect to the circumstances under which the project is being
undertaken which will require major revisions in the [EIR]. [¶] (c) New
information, which was not known and could not have been known at the
time the [EIR] was certified as complete, becomes available." (§ 21166.)

"[S]ection 21166 comes into play precisely because in-depth review has
already occurred, the time for challenging the sufficiency of the original EIR
has long since expired (§ 21167, subd. (c)), and the question is whether
circumstances have *changed* enough to justify *repeating* a substantial portion
of the process. . . . [¶] Section 21166 is intended to provide a balance against
the burdens created by the environmental review process and to accord a
reasonable measure of finality and certainty to the results achieved."
(*Bowman v. City of Petaluma* (1986) 185 Cal.App.3d 1065, 1073–1074.)

The CEQA Guidelines provide that the lead agency shall prepare an
addendum if some changes or additions are necessary but none of the
conditions requiring a subsequent EIR have occurred. (Guidelines, § 15164,
subd. (a).) "An addendum need not be circulated for public review but can be
included in or attached to the final EIR or adopted negative declaration."
(*Id.*, subd. (c).) Prior to making a decision on a project, "[t]he decision-making
body shall consider the addendum with the final EIR or adopted negative
declaration . . . ." (*Id.*, subd. (d).) "A brief explanation of the decision not to
prepare a subsequent EIR . . . should be included in an addendum to an EIR,
the lead agency's required findings on the project, or elsewhere in the record.
The explanation must be supported by substantial evidence." (*Id.,* subd. (e).)

11

In reviewing the denial of a petition for a writ of mandate filed in a CEQA case, our review is the same as that of the trial court. (*Citizens' Committee to Complete the Refuge v. City of Newark* (2021) 74 Cal.App.5th 460, 469 (*City of Newark*).) We determine whether the agency abused its discretion, which is established if the agency has not proceeded as required by law or if the agency's determination or decision is not supported by substantial evidence. (*Ibid.*) The agency's decision not to require a supplemental EIR will be upheld " 'if the administrative record as a whole contains substantial evidence to support the determination that the changes in the project or its circumstances were not so substantial as to require major modifications of the EIR. [Citation.] This deferential standard is a reflection of the fact that in-depth review has already occurred. [Citation.]' " (*Citizens Against Airport Pollution v. City of San Jose, supra*, 227 Cal.App.4th at p. 797.) Plaintiffs have the burden to show there is no substantial evidence to support the agency's findings. (*Id.* at p. 798.)

## II. *Substantial Evidence Supports the City's Determination that a Further EIR Is Not Required*

Plaintiffs' opening brief correctly states the limited conditions under which a supplemental EIR is required pursuant to section 21166, which is only if: "(a) Substantial changes are proposed to the project which will require major revisions of the [EIR;] [¶] (b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the [EIR; or ¶] (c) New information, which was not known and could not have been known at the time the [EIR] was certified as complete, becomes available." (§ 21166.) They then argue that a further EIR is required because (1) new information regarding the rate of sea level rise is available; (2) increasing sea level rise is a significant changed condition affecting the project's impacts; (3) there are significant changes to the project;

12

(4) changes to the project require an updated geotechnical report; (5) changes to the project require an updated human health risk assessment; and (6) the 2019 FS/RAP constitutes new information that was not considered in the FEIR.

## A. Information Regarding Rate of Sea Level Rise[5]

We address plaintiffs' first two arguments together as they both involve alleged new information regarding an increased rate of sea level rise. Plaintiffs' claims are based on the information their counsel provided to the planning commission in November 2020. Plaintiffs submitted a May 2020 California Coastal Commission proposal—the 2020 SLR Recommendation— recommending adoption of a document titled " 'Making California's Coast Resilient to Sea Level Rise: Principles for Aligned State Action,' " which was prepared by various "state entities with coastal climate resilience responsibilities . . . ." The 2020 SLR Recommendation states, in part,

---

[5] HRP argues that the nonpublished decision of our colleagues in Division Two in *Mothers Against Toxic Housing v. Department of Toxic Substances Control* (May 16, 2024, A166861) binds the plaintiffs under the doctrine of res judicata regarding their claims related to sea level rise. In *Mothers Against Toxic Housing*, some of the same plaintiffs challenged the DTSC's July 2021 approval of a prospective purchaser agreement with HRP. (*Ibid.*) One of the issues raised by the plaintiffs in *Mothers Against Toxic Housing* was whether new information, including information regarding sea level rise, required further environmental review. (*Ibid.*) Plaintiffs respond that claim preclusion does not apply, in part, because the *Mothers Against Toxic Housing* case involved a challenge to a different CEQA document (the prospective purchaser agreement) issued by a different respondent agency (DTSC). We need not decide whether claim preclusion applies under these circumstances. Instead, we affirm the denial of the petition for writ of mandate on the grounds that plaintiffs fail to meet their burden to establish that substantial evidence does not support the City's determination that further environmental review is not required. (*Citizens Against Airport Pollution v. City of San Jose, supra*, 227 Cal.App.4th at p. 797.)

13

"The Principles for Aligned State Action also include a target of 3.5 feet of sea level rise by 2050 for planning purposes, which sets a precautionary minimum baseline . . . ." The background section of the attached principles references "increasing threats from sea level rise (SLR)" and states that "[e]very scientific assessment since California's 2009 Climate Adaptation Strategy has revealed that coastal impacts from climate change-caused SLR will occur more quickly and be more severe than previously projected. California's coast faces a significant risk of experiencing SLR of up to 1.0 feet [*sic*] by 2030 and 7.6 feet by 2100."[6]

As explained in *City of Newark*, "CEQA Guidelines section 15162, subdivision (a)(1) expands on the concept of project changes by stating that an agency shall not conduct further review of a project unless '[s]ubstantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects.' " (*City of Newark, supra*, 74 Cal.App.5th at p. 475.) The same guideline also allows for further review if there is new information "of substantial importance, which was not known and could not have been known with the exercise of reasonable diligence at the time the previous EIR was certified as complete," that shows the project will have one or more significant effects not discussed in the previous EIR, significant effects previously examined will be substantially more severe, or

---

[6] Plaintiffs also request that we take judicial notice of the Ocean Protection Council's 2018 sea level rise guidance, which they assert is the basis for the summary in the 2020 SLR Recommendation. We deny plaintiffs' request because this document was not presented to the trial court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [absent exceptional circumstances, reviewing courts generally do not take judicial notice of evidence not presented to the trial court].)

considerably different mitigation measures than those previously analyzed would substantially reduce environmental effects. (Guidelines, § 15162, subd. (a)(3).)

Plaintiffs fail to demonstrate that the information in the 2020 SLR Recommendation meets these standards, for multiple reasons. Initially, as recognized by our colleagues in Division Four, "[s]ea level rise is not an impact on the environment caused by the project . . . ." (*City of Newark, supra,* 74 Cal.App.5th at p. 478; see *Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455, 473–474 [finding EIR was not required to discuss impact of sea level rise on project; "the purpose of an EIR is to identify the significant effects of a project on the environment, not the significant effects of the environment on the project"].) Moreover, "[t]he City's potential responses to environmental conditions between 50 and 80 years from now cannot be considered part of the current project. Additionally, the range of projections for sea levels by that time are wide and sea levels at different ends of those projections could warrant significantly different responses. Because the City currently can only dimly guess what measures will be needed to respond to conditions several generations from now, the City was not required to analyze the impacts of the adaptive pathways as part of this project. (*Environmental Council of Sacramento v. County of Sacramento* (2020) 45 Cal.App.5th 1020, 1031 [citation] ['CEQA does not require an EIR to discuss future developments which are unspecified or uncertain. "Such analysis would be based on speculation about future environmental impact" '].)" (*City of Newark*, at p. 479.)

Plaintiffs assert *City of Newark* recognizes that CEQA may require an agency to analyze actions to manage or mitigate the effects of sea level rise and that sea level rise may be relevant as a factor exacerbating a project's

15

impacts. (*City of Newark, supra*, 74 Cal.App.5th at pp. 477, 479.) However, to the extent plaintiffs contend that the City was required to consider sea level rise as a factor that may exacerbate the project's impacts or to consider how to manage or mitigate the effects of sea level rise, the administrative record amply demonstrates that the City did so in the EIR. Contrary to plaintiffs' statement that the EIR "relied on" estimates of sea level rise of only up to three feet by 2100, the EIR actually considered various estimates of sea level rise ranging from up to two feet by 2050 to up to 5.5 feet by 2100.[7] It states that these ranges were based on planning guidance from the State of California, incorporating scientific findings from the National Research Council. The sea level rise projections considered in the EIR were specifically for the San Francisco Bay. The EIR also acknowledged that "all trends [regarding sea level rise] are upward . . . ."

The EIR found that with mitigation measures, including a required adaptive flood risk management plan prior to the issuance of building permits, the impact of sea level rise of even up to 5.5 feet would be less than significant. The plaintiffs contend that, based on the information contained in the 2020 SLR Recommendation, the City is now required to conduct further environmental review to consider the impact of sea level rise of up to 7.6 feet. We reject their claim. As HRP and the trial court explain, the EIR's

---

[7] Plaintiffs' opening brief states that the EIR relied on the state's guidance from 2013 estimating average sea level rise of 11 inches by 2050 and 36 inches by 2100. Although the EIR refers to these lower ranges, the very next sentence of the EIR states: "The NRC's [National Research Council] possible range for San Francisco Bay sea level rise in 2050 is 5 to 24 inches and in 2100 is 17 to 66 inches." Later in their opening brief, even plaintiffs concede that the EIR considered sea level rise of up to 5.5 feet and determined that mitigation measures could accommodate up to 5.5 feet of sea level rise.

analysis of sea level rise of up to 5.5 feet exceeds the 3.5-foot target the 2020 SLR Recommendation states should be used for planning purposes. The plaintiffs' reliance on the single reference to the risk of sea level rise of 7.6 feet by 2100 on "California's coast" is contained in the background section of the "Principles for Aligned State Action" attached to the 2020 SLR Recommendation and is not adopted as a target for planning purposes. As HRP also notes, the general reference to the risk to "California's coast" does not indicate a prediction of sea level rise in the specific area of the HRP project. The EIR's prior consideration of sea level rise complies with the 3.5-foot target stated in the 2020 SLR Recommendation.

In addition to the information contained in the EIR evaluating sea level rise of up to 5.5 feet, the administrative record also contains a December 1, 2020 memorandum prepared by the City's community development director responding to various issues raised in connection with approval of the addendum and the HRP project, including sea level rise impacts. The memorandum enclosed a December 1, 2020 technical memorandum from a hydrologist discussing the sea level rise issues raised during public comment on the addendum. The hydrologist's memorandum states that sea level rise in the San Francisco Bay Area is likely to be up to 3.4 feet by 2100, with only a 5-percent chance of reaching 3.5 to 4.4 feet by 2100 and only a 0.5-percent chance of reaching 5.9 to 6.9 feet by 2100. It further states that the California Coastal Commission recommends preparing for 3.5 feet of sea level rise by 2050. It refers to the mitigation measure requiring an adaptive flood risk management plan and states that the HRP project's building pads are at least seven feet above the current 100-year base flood elevation. It concludes that, as explained in the addendum, the HRP project will protect against

17

hazards from sea level rise for 3.0–5.5 feet, which meets the new state guidance of planning for a rise of at least 3.5 feet.

Plaintiffs acknowledge the trial court referenced the hydrologist's memorandum in its order, but they argue, without further analysis, that the trial court "misconstrued" the document to suggest the chance of a high rate of sea level rise was remote. What plaintiffs fail to acknowledge or adequately address is the hydrologist's memorandum provides additional substantial evidence supporting the City's determination that a supplemental EIR was not required. (See *Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 512 [substantial evidence review does not weigh conflicting evidence to determine who has better argument].)

To the extent plaintiffs argue the EIR or the FS/RAP did not properly evaluate the effect that sea level rise would have on hazardous waste treatment at the site, these documents are not challenged and are now final and presumed correct. (*Friends of College of San Mateo Gardens v. San Mateo Community College Dist.* (2016) 1 Cal.5th 937, 949–950 [" 'The event of a change in a project is not an occasion to revisit environmental concerns laid to rest in the original analysis. Only changed circumstances . . . are at issue' "]; *Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1130 [unless lawsuit is brought to contest validity of a certified EIR, the EIR is conclusively presumed valid and the interests of finality are favored over policy of encouraging public comment].) The only issue before us is whether substantial evidence supports the City's determination that further environmental review was not required because none of the conditions in section 21166 are applicable. (§ 21166.) As discussed *ante*, the administrative record contains substantial evidence supporting the City's determination that no new information or changed

18

circumstances regarding sea level rise required additional environmental review. (*Citizens Against Airport Pollution v. City of San Jose, supra*, 227 Cal.App.4th at pp. 797–798.)

## B. Significant Changes to Project

Under a subheading entitled "Significant changes to the Project require supplemental CEQA review," plaintiffs argue that "[m]ajor changes to the Project since the 2016 EIR, including expanded residential use and in situ treatment of hazardous use [*sic*], require supplemental analysis." (Boldface omitted.) They then summarize the trial court's findings that plaintiffs failed to demonstrate that the increased number of residential units required further environmental review because the EIR and the specific plan anticipated a mix of land uses and provided for flexibility and "variation in the distribution and type of development and uses throughout the Plan area."[8] (Underscoring omitted.)

Plaintiffs argue, with limited citation to the record,[9] that the EIR did not "examine the potential for buildings over a hazardous waste dump to increase health risks to Richmond residents" or the project site's "vulnerability to sea-level rise as a condition affecting the dispersal of or exposure to hazardous substances." The administrative record belies plaintiffs' claims. The EIR evaluated a mixed use development project that

[8] The trial court also quotes the EIR, which specifically considered the possibility of an increase in the number of residential units: " '[A]s long as the actual development within the Plan Area stays within the impact envelope established in this EIR, there can be a mix and match between various land uses (e.g., there can be more residential if less commercial is built, and vice-versa).' " (Underscoring omitted.)

[9] California Rules of Court, rule 8.204(a), requires parties to support *any* reference to a matter in the record by a citation to the page and volume number of the record where the matter appears.

19

would include residential units on the Zeneca property. The EIR and the addendum considered the risk of sea level rise, evaluated mitigation measures, and considered health risks due to the hazardous waste at the site. The 2019 FS/RAP also considered these risks and explicitly "assume[d] a multi-family residential redevelopment footprint over the Site and cleanup of the groundwater and soil gas to a residential standard." As noted, plaintiffs did not challenge the EIR or the FS/RAP.

Plaintiffs speculate, without citation to any evidence, that the HRP project will expose thousands of people to "some increased risk of exposure to hazardous chemicals"; that "[t]he number of residential units could be consequential if the site later becomes unsafe for residents"; and that "vapor intrusion or groundwater leaks could go undetected and cause serious health defects . . . ." Plaintiffs' speculation is insufficient to meet their burden of demonstrating that the increase in the number of residential units is a substantial change that requires a major revision to the previous EIR. (Guidelines, §§ 15162, subd. (a), 15384, subd. (a) ["Argument, speculation, unsubstantiated opinion or narrative . . . does not constitute substantial evidence"].)

### C. Forfeited Arguments

#### 1. Geotechnical Report and Human Health Risk Assessment

Plaintiffs' opening brief argues that changes to the project require an updated geotechnical evaluation and an updated human health risk assessment. They acknowledge the trial court found that these issues were waived because plaintiffs failed to brief them below, and they do not argue this was error. It is axiomatic that a party may not raise new issues on appeal that were not presented to the trial court. (*Citizens Opposing a Dangerous Environment v. County of Kern* (2014) 228 Cal.App.4th 360, 380,

fn. 16.)  We find plaintiffs forfeited their arguments regarding an updated geotechnical evaluation and human health risk assessment by failing to brief these issues in the trial court, and we will not consider them for the first time on appeal.  (*Ibid.*)

2.    2019 FS/RAP

The trial court found that plaintiffs waived their argument that the 2019 FS/RAP was new information requiring further environmental review because they raised it for the first time in their reply brief. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 799 [arguments raised for the first time in reply brief may be deemed waived].)

Although plaintiffs' briefing is not entirely clear on the threshold issue of whether this argument may even be considered on the merits, we understand that they assert the trial court erred in finding waiver and that, alternatively, it erred in denying their Code of Civil Procedure section 473 motion for relief from mistake, inadvertence, or excusable neglect.  As explained *post*, we find no error as to the trial court's finding of waiver and its denial of plaintiffs' Code of Civil Procedure section 473 motion.

a.    *Trial Court Did Not Err in Finding Waiver*

Plaintiffs argue that the trial court erred by finding they waived their argument regarding the 2019 FS/RAP's constituting new information.  They contend that "[a] fairer reading" of their opening brief filed in the trial court demonstrates that "although the FS/RAP was not defined as a standalone issue in [their opening brief], it did address this as an element of the claim addressing new information concerning sea-level rise."  We reject this argument.  The portions of the plaintiffs' trial court opening brief to which they cite do not state that the DTSC's adoption of Alternative 3a in the 2019 FS/RAP is new information requiring supplemental CEQA review.  It is

21

plaintiffs' burden to provide cogent, reasoned analysis of their claims, and it is neither the appellate court's nor the trial court's obligation to craft arguments on a party's behalf. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [courts are not bound to develop arguments for parties, and arguments not supported by cogent legal argument or citation may be treated as waived].)[10] The trial court did not err in finding waiver.

### b. *Denial of Code of Civil Procedure Section 473 Motion Was Not an Abuse of Discretion*

Following the hearing on plaintiffs' petition for writ of mandate and the issuance of the trial court's tentative ruling, which found that the plaintiffs waived arguments raised for the first time in their reply brief, plaintiffs filed a motion for relief under Code of Civil Procedure section 473, subdivision (b). The motion was supported by a declaration from plaintiffs' counsel, which

---

[10] Although the trial court found that plaintiffs waived their claim that the adoption of Alternative 3a in the 2019 FS/RAP was a changed circumstance, it also explained why it would reject the argument in any event. The trial court found that the plaintiffs failed to demonstrate that the EIR assumed a different remediation plan would be implemented by the DTSC. The EIR notes that remediation of the Zeneca property is continuing to be investigated by the DTSC. The 2019 FS/RAP, which adopted Alternative 3a, provides for remediation of the project site to allow for ground floor residential uses, which is consistent with the Specific Plan as analyzed in the EIR. The 2019 FS/RAP also considered the issue of sea level rise. Further, it is undisputed that the 2019 FS/RAP and accompanying negative declaration are not at issue in this action. To the extent plaintiffs claim the remediation plan adopted in the FS/RAP is inadequate in light of the residential development planned for the site, this is an issue that they could have raised when the DTSC adopted the FS/RAP with a negative declaration. (*Friends of College of San Mateo Gardens v. San Mateo Community College Dist., supra*, 1 Cal.5th at p. 949.) Thus, even if we determined the trial court erred in finding the plaintiffs waived their claim that the adoption of Alternative 3a constitutes new information or changed circumstances requiring further environmental analysis, we would find against the plaintiffs on the merits.

stated that he "inadvertently omitted" "major sections" from the plaintiffs' opening brief.[11] The trial court denied the motion on the basis that plaintiffs failed to demonstrate diligence in seeking relief and that the evidence did not support a finding of mistake, inadvertence, or excusable neglect. On appeal, plaintiffs argue the trial court's denial of their motion should be reversed.

We review the trial court's discretionary decision to grant or deny relief under Code of Civil Procedure section 473, subdivision (b) for abuse of discretion. (*County of San Bernardino v. Mancini* (2022) 83 Cal.App.5th 1095, 1103.) Plaintiffs fail to establish an abuse of discretion. The trial court's lack-of-diligence finding was based on plaintiffs' counsel's declaration stating that he learned of the inadvertent omissions from the opening brief when he received HRP's opposition brief. HRP's opposition brief was served on March 4, 2022. Plaintiffs waited until May 4, 2022, to file their Code of Civil Procedure section 473 motion. Plaintiffs fail to establish the trial court abused its discretion by finding plaintiffs' two-month delay in seeking relief did not meet the diligence requirement of Code of Civil Procedure section 473, subdivision (b). (*Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1144–1145.)

Nor does the plaintiffs' counsel's declaration establish excusable error under the statute. The declaration states only that due to an increased workload involving preparation of an administrative record, counsel had to "hurriedly complete and submit the [opening] brief" and did not have time to "do a final pre-submittal review of the brief . . . ." As the trial court correctly found, and as plaintiffs' appellate opening brief even recognizes, " 'conduct

---

[11] Although plaintiffs' counsel's declaration does not specifically describe which issues were "inadvertently omitted," it states that he raised them in his reply brief. Plaintiffs' trial court reply brief argues that DTSC's 2019 FS/RAP, which selected Alternative 3a for remediation of the Zeneca property, was a changed circumstance requiring additional analysis.

falling below the professional standard of care such as failure . . . to properly advance an argument . . . is not excusable neglect.' " (*Ambrose v. Michelin North America, Inc.* (2005) 134 Cal.App.4th 1350, 1354.)

## III. *Fair Hearing Issues*

Plaintiffs contend they were denied a fair hearing and approval process for the EIR addendum. The trial court's order denied plaintiffs' contentions in a detailed discussion of the various administrative hearings held on November 19, 2020, December 1, 2020, and December 15, 2020. A fundamental principle of appellate review is that the trial court's decision is presumed correct and the appellant bears the burden of demonstrating error. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) Plaintiffs fail to meet this burden. The argument section in plaintiffs' opening brief fails even to identify which hearings they contend were purportedly unfair. Further, their arguments are not sufficiently supported by citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C) [appellate briefs must "[s]upport *any* reference to a matter in the record by a citation to the volume and page number of the record where the matter appears" (italics added)].)

Plaintiffs begin their general argument of procedural unfairness with the statement that "[d]ozens of citizens complained about procedural unfairness issues in public comments" and then cite to over 150 pages of the administrative record. They then state that complaints were made of incorrect call-in numbers, problems with the use of video conferencing, and restrictions on questioning. The citation plaintiffs provide for this statement is a six-page December 15, 2020 letter to the City's mayor and members of the city council from the president of Citizens for East Shore Parks. The letter raises multiple concerns about the HRP project but makes no reference to an incorrect call-in number, insufficient capacity for remote video

24

conferencing, or a restriction on questioning. Page 2 of the cited letter refers to a prior letter that complained of "a seriously flawed public process in which members of the public were excluded from participation" in a November 19, 2020 planning commission hearing and states "this exclusion of the public also happened at your meeting of December 1,. 2020 [*sic*]." The cited letter provides no details of the alleged "flawed public process." After these scant record citations that at most convey a generalized complaint of a "flawed process," plaintiffs' opening brief then details multiple alleged procedural issues at various unspecified hearings, including problems with the use of remote video conferencing, discrepancies in the speaking time between proponents versus opponents of the project, and certain statements of the mayor that plaintiffs perceive as disrupting a councilmember's questions. Plaintiffs provide no record citations to support these claims.[12]

Under a separate subheading, plaintiffs argue a community benefits agreement "biased the process in favor of approval . . . ." Again, their argument makes multiple factual statements without citation to the record, in violation of California Rules of Court, rule 8.204. In addition, we agree with HRP that because plaintiffs did not assert this argument in the trial court, it may not be considered on appeal. (*A Local & Regional Monitor v.*

---

[12] To the extent plaintiffs may have provided record citations to some of these asserted facts in the statement of facts section of their brief, this does not cure their violation of California Rules of Court, rule 8.204(a)(1)(C). (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 [purpose of Cal. Rules of Court, rule 8.204(a)(1)(C), is to "enable the reviewing court to locate relevant portions of the record 'without thumbing through and rereading earlier portions of the brief.' [Citation.] To provide record citations for alleged facts at some points in a brief, but not at others, frustrates the purpose of that rule, and courts will decline to consider any factual assertions unsupported by record citations at the point where it is asserted"].)

*City of Los Angeles* (1993) 12 Cal.App.4th 1773, 1804 [a party may not raise new issues on appeal not presented to trial court].)  Plaintiffs' reply brief responds that they addressed alleged bias in the trial court and although they focused on actions and statements of the mayor and planning commissioners, "[their] larger discussion [of alleged bias] repeatedly noted that holding a hearing on the community benefits program prior to the release of the Addendum plainly influenced some community member [*sic*] to support the Project for that reason."  Plaintiffs cite to the factual background section of their opening brief in the trial court, which mentions the various " 'community benefits' " promised by HRP.  However, the argument section of plaintiffs' trial court opening brief does not mention the community benefits agreement, much less contend that it improperly influenced the CEQA proceedings.  Nor is the issue mentioned in the trial court order's detailed discussion of the fair hearing issues raised by plaintiffs.

We reject plaintiffs' claims regarding an alleged unfair hearing process because they failed to properly brief the issues with appropriate record citations (*Alki Partners, LP v. DB Fund Services, LLC, supra*, 4 Cal.App.5th at p. 590, fn. 8) and because they forfeited the portion of their argument regarding the community benefits agreement by failing to raise it in the trial court (*A Local & Regional Monitor v. City of Los Angeles, supra*, 12 Cal.App.4th at p. 1804).

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal. HRP's motion for sanctions is denied.

Jackson, P. J.

WE CONCUR:

Simons, J.

Chou, J.                                     A166004/*Richmond Shoreline Alliance v. City of Richmond*

26